The next case, number 21-1345, United States v. Jose A. Mendez-Rodriguez. At this time, would attorney Bird-Lopez please introduce herself on the record to begin? Good morning. May it please the court, Alejandra Bird-Lopez on behalf of Jose Mendez-Rodriguez. I'd like to reserve two minutes for rebuttal, if I may. If you may. Mr. Mendez is a first time offender, a hard working father of five, who has had stable legal employment since he was 14. Prior to his arrest in this case, he had had no prior contact with law enforcement and no record of criminal associations, and not even a traffic ticket to his name. He has no history of drug or alcohol use, and prior to the sentencing in this case, he spent a year and a half on bail in full compliance with his conditions. Based on his record, his defense attorney at the sentencing asked for a probationary sentence after he had pled guilty to a 922-0 offense. The government requested a guideline sentence. The court, nevertheless, imposed an upward variance based on the nature of machine guns without explaining why that factor was entitled to extra weight or why the circumstances of the case took it out of the heartland of 922-0 offenses. This particular court knew it should have given that explanation because it had eight months earlier been reversed in the Riveras-Verrios decision, which held that a court cannot rely on the nature of a machine gun to upwardly vary from a 922-0 offense by itself. I thought the judge specifically noted extra magazines, extra ammunition. Is that not? So at the conclusion of the hearing, after having issued its sentence, defense counsel objected on the basis that the court was basing its variance and its decision on the nature of machine guns. And at that point, after the sentencing decision had already been issued and objections placed on the record, the court said, well, I was also basing my decision on the number of ammunition, on the amount of ammunition and the number of magazines. And at that point, the defense counsel, who had been obviously alluding to the court's, this court's Riveras-Verrios decision, restated its objection because it understood that that explanation did not take the case out of the heartland of 922-0 offenses. So this case really is, and at that point, defense counsel was really not obligated to engage in an additional argument with the judge. Rule 51 requires basically that he state its position, and that's what was given. And so those were the two reasons that were given by the court for the upward variance in this case. This case is not meaningfully distinguishable from Rivera-Verrios, from Garcia-Perez, and from Carrasquillo-Sanchez. So you're saying at the point the court came up with additional ammunition justification that the court was not in a position to change the sentence imposed anyway? It could have, but it did not say that it was reconsidering the sentence. Could it have reconsidered the sentence once it imposed it? It could have, yes. I mean, the court has discretion within the context of a sentencing hearing to reconsider. Normally, that's not what's expected, and the defense counsel is not under an obligation to ask for a reconsideration. Its obligation is to state its objections for the record, and that was done in this case. So the other important component of Rivera- Yes? I'm going to let you get your argument out, but I'm trying to figure out exactly what's going on. And I know this is going to come up at our en banc hearing soon, but generally when defense counsel are representing folks with this particular charge, is it just sort of known to everybody in the bar here that if you go before a certain judge, is it sort of general notice that you're going to get a higher sentence for this charge? There's a, well, my experience, I can speak to my experience and the experience of the colleagues that I interact with, yes, there is an expectation that specifically a certain judge will give a higher sentence for this particular offense. So from the bar's perspective, do you view it as adequate notice, and do you view it as the court's policy disagreement with the sentencing guideline? We- Or do you not know what to make of it exactly? This particular court gives different reasons in different cases, which may be appropriate because each case is different and needs to be judged on its particular facts and circumstances. But there are different reasons given in each of the hearings. So the counsel prepares to argue, listens to the judge's reasoning, and makes the objections based on the reasoning that he understands. And the defense counsel in this case said, I am understanding that this court's decision is based on something that is already accounted for by the guideline range and doesn't take this out of the heartland. What Thompson was asking, is this sort of like a Kimbrough policy decision, the judge, obviously Kimbrough was going down, but isn't the judge, this particular judge, and we all know it's Judge Bessosa, isn't he making a Kimbrough type policy going upwards in many of these cases? Well, I have to take the record as I find it. And the judge did not make that justification in this case. He did not. So, and it would be unfair really to hold each defense counsel who goes before a particular judge to place objections on the record based on reasons that the judge has given in other cases. Because it would be really to hold the defense bar to a very, very high standard to really anticipate every single possible argument for that the judge could come up with for the reasoning in the particular case. So we, the defense bar has to, the defense counsel has to get there and listen to what the judge is saying and place objections on the record based on what the judge is saying there. Let me ask you, if you're somewhat expecting an upwards variance, can't you go prepare and say, judge, in the past, under these cases, you've granted variances. This is different to that case. And let me say, from my experience with the Federal Defender's Office, on several occasions, counsel would come prepared and say, judge, in the past, we know, for example, it's. In child pornography cases, this is how you normally sentence. We believe this is different to that. And I sometimes was convinced, other times not. But I did have counsel who were prepared to argue that way, and many times successfully, other times not. So. Well, I think it's a, I'm sorry, go ahead. Counsel did argue Rivera Barrios, I'm sorry, I can't pronounce it as lovely as you. Berrios. Berrios, that was argued. Well, it was alluded to because he, the objection he placed on the record was basically that it was that the nature of the machine gun was already taken into account in the guideline range. So I don't think it was mentioned specifically. In other cases, in other sentencing hearings that I've handled the appeals, it has been mentioned specifically. So I think that yes, a defense counsel can bring those arguments sort of preventively and sort of anticipate this kind of move by the judge, but it's certainly not obligated to do so. And it's not, it doesn't represent a waiver if it doesn't do it. Each defense counsel has to deal with the case as it finds it, and take the approach that it finds will best serve the client in that case. Let me ask another question, and this is something I'll also, it's a question for the government when it's the government's turn. But Rivera Barrios is out there, but there are other cases that would point out, perhaps conflict with Rivera Barrios. There are several cases, so would you say Rivera Barrios is the controlling authority? Or there are other cases, and it's really a case by case issue, what's your position on that? There is no prior case to Rivera Barrios that conflicts, which was on all fours on point with Rivera Barrios that is contrary to it. So no, Rivera Barrios is the controlling authority for a first time offender in a 922 offense where there are no other aggravating factors which would suggest some kind of particular concern with public danger. There are cases in the first circuit that have mentioned among many other factors the possibility that the amount of ammunition could be a factor that's taken into consideration, but there are no cases that hold that that's the only facet that is, that that's the only, and I'm focusing on the amount of ammunition because the government makes a really quite extraordinary argument that there are 25 previous cases that hold that the amount of ammunition can be considered and can be by itself an aggravating factor. Those cases do not support that proposition. If one looks at those cases carefully, there are always aggravating, and I would argue much more serious public safety concerns involved in those cases. I would say there's the ammunition similar to here, but there's one or two added factors, not simply just the ammunition. Well, there's usually either a history of violence or violence at the time that the defendant was arrested. Or a history of sort of a coming in and out of prison for the same offense. But your position is mere ammunition itself, in and of itself, it's no grounds for ruling like this for a sentence. At least where it's entirely consistent with the possession of a machine. And here in this particular case, I notice, and correct me if I'm wrong, Judge Bessosa did not add a community factor. So community factors is not part of the sentence. That is not part of the sentence in this case. Okay, any other questions from my colleagues? Anything else, 30 seconds you want to add, or? Just for one moment, just to point out, if a guideline sentence had been issued in this case, then Mr. Mendez would probably most likely be in community placement as we speak. So I would ask for a quick resolution to this appeal if the court would, please do so. Thank you. Thank you, Counsel. Mr. Godfrey. At this time, Mr. Godfrey, please introduce yourself on the record to begin. May it please the court? Jonathan Godfrey on behalf of the United States. The district court in this case fully justified the two and a half year sentence imposed. After stating that it was going to consider the 3553A factors, it then proceeded to mention six individualized characteristics that fully justified the six month variance in this case. Number- Like what? Excuse me? Like what? Number one, Your Honor, ammunition, 56 bullets. There were- Why isn't that consistent with simple possession? Because, Your Honor, there were two loaded, two high capacity magazines. One with 21 bullets and one with 22 bullets. We're not just talking about a magazine inside the gun, which arguably could be simple possession. This person also had two high capacity magazines. And this is squarely on point, and I respectfully agree with Sister Counsel on this, with Garcia Mojica, which was decided in April 2020, months before this court's decision in Rivera Berrios. Number one, in both cases, in this case and Garcia Mojica, we're dealing with a modified Glock pistol. Number two, in both cases, we're dealing with a high, two high capacity magazines. Number three- Did the court say any of that? I'm sorry, in this- Did the district court say any of that? In this case? Yes, three times. At page 17 of the appendix, lines 19 to 22. At page 17, lines 23 to 24. And then again, when challenged by defense counsel, after imposing sentence, at lines 23, I'm sorry, at page 23, lines 22 to 24, three times the court referenced the high capacity magazines and the large amount of ammunition. So that was clearly central to the district court's decision here. Just as it was in Garcia Mojica. In Garcia Mojica, the court there had two bases of its upward variance. And I'd note there, that was 100% upward variance. Here we're talking about a 25% upward variance. In that case, in Garcia Mojica, the upper end of the guidelines was 51 months. And in Garcia Mojica, the court imposed a 49 month upward variance. There were two considerations in Garcia Mojica for the upward variance. Number one, the fact that the firearm, the machine gun was possessed while the individual was on a suspended state sentence. What did the first circuit say about that? It said, quote, the guidelines accounted for the aggravated nature of the weapon during the pendency of a suspended sentence. And that's correct, the guidelines under 481.1 increase the criminal history based upon the possession of the commission of the offense during the pendency of a sentence. So this first circuit then moved on in Garcia Mojica. And said, we'll now look at the justification for the upward variance based on the amount of ammunition. Which is what the government is asking the court to do in this case. And what did the first circuit say? It said, quote, the guidelines do not take into consideration the extra ammunition Garcia was carrying when apprehended. And it therefore affirmed a 100% upward variance based on how much ammunition? 47 rounds in two high capacity magazines. What do we have here? Two high capacity magazines, 56 rounds. Garcia Mojica dictates the outcome in this case and requires this court under the law of the circuit to affirm the sentence. But that's not all. This is, yes, your honor. Let me ask, is Rivera-Rios in the government's perspective an isolated case or is it in conflict with Garcia Mojica? You can explain that. The court need not necessarily read a conflict with that case. In Rivera-Rios, according to the first circuit, the district court relied solely on the nature of the machine gun for the variance. In particular, this court said, quote, in varying upward from this range, the sentencing court appears to have relied on nothing, on nothing beyond the mere fact that the offensive conviction involved a machine gun. That is the holding of this court in Rivera-Rios. It was not relying upon the amount of ammunition, and the first circuit explicitly limited its conclusion that the upward variance was based solely on the nature and characteristics of a machine gun. Now, in this case, yes, the court did consider the nature and the characteristics of the machine gun, but it went further beyond that. The key for the sentence to be substantively reasonable is, again, you can't simply rely on the nature of the machine gun, but you have to have X, Y, Z, whatever other additional factors to distinguish that, correct? Yes, I would note, Your Honor, that this is- Similar to Garcia-Mojica. That is a reading of Rivera-Rios, and I would note that next Friday I understand that there will be an en banc evaluating whether or not that additional consideration is correct. But even if we assume that that is a valid interpretation and law of the circuit, this case of Mr. Mendez Rodriguez still passes muster. Let me ask you a question regarding that en banc, because in this case, there's no community factor element. Correct. So my question is, could this case be decided under Garcia-Mojica independent of whatever happens in the en banc? Yes, Your Honor. And not only did the court consider the ammunition that individualized characteristic, it also considered the place that was something else that the court mentioned. In particular, the court said that he was headed to play a slot machine in a local sports bar prior to his arrest. The court also expressed the concern- Is that a consideration of place or recitation of history? The court mentions that right after saying that it was going to consider the 3553 factors. And so a reasonable reading is that this factored into the court's analysis of the 3553 factors. And not only does it mention the place, Your Honor, but it also later goes back and says this gun is particularly difficult to control, which again feeds back into the place where this occurred. And that's something- A slot machine place is kind of like a casino, so with a gun there, something's going to happen awful there if it gets fired. Yes, and that's not taken into account in the guidelines. It's not taken into account in the guidelines that this was in a sports bar and that the gun was not locked in a safe. This was not an empty field. What is the empirical data suggesting that that weapon is difficult to control? Yes, Your Honor, the court noted that the pistol was altered to be a machine gun. So it was altered. That is, that conclusion is reinforced by the defendant's own sentencing memorandum, which refers it to as an altered gun. Why is that more difficult to control? It's a reasonable inference- But what is the empirical data that says an altered gun is more difficult to control? There is none in the record, Your Honor, and I would respectfully submit that there is no evidence that the defendant is tinkering with a pistol that is a dangerous weapon in and of itself and is converting that into something even more dangerous through handmade modifications. It will be even more difficult to control. And let me ask this also. When the defendant pled guilty, he's accepting this is a machine gun? Yes, Your Honor. And it was modified, so he accepted those two elements, correct? Yes, Your Honor. And in addition to that, the record supports the kind of modification because the PSR in the supplemental appendix of page 4 says that this, the modification to the firearm can be seen in the back plate of the firearm. It's an adapter that's silver and gold in color, which goes to the next justification for the variance, the defendant's minimization of his responsibility, which goes to the need for greater deterrence in this case. In particular, the Court noted that the defendant's claim that he bought the firearm for his protection. Now, the Court cast doubt on the need to buy a machine gun and 56 rounds of ammunition merely for self-defense. In particular, the Court said, quote, highly dangerous and unusual weapons are not typically possessed by law-abiding citizens for lawful purposes, unquote. That's fairly in line with this Court's precedent in Gonzales-Rodriguez, decided in 2017, where the Court looked with approval upon the statement that, a district court statement, that you cannot argue that this Glock pistol modified to shoot automatically can be used for personal defense. It's not a regular weapon, it's a machine gun. So the Court looks with doubt upon the defendant's minimization of responsibility that was bought for self-defense. But that's not all, because the Court also looks at the defendant's statement, where he says that he didn't know that it was a machine gun. And the Court says that he doesn't believe that. And he doesn't believe that based on the large volume of ammunition that came along with that gun. And that's also supported in the record, because if you go to the PSR, again, it indicates that that modification, turning it from semi-automatic to fully automatic, is a silver and gold adapter on the back of a black gun. So what we have, Your Honor, we have the amount of ammunition. We have the place. We have the defendant's lack of candor, his minimization of responsibility. We have the fact that it's difficult to control. And, oh, yes, there's also another thing, which is no firearm training. There is no indication that this defendant served in the Army, no law enforcement experience. And he tells police, according to the PSR, when he's arrested, he has no firearm license. So we're dealing with a modified pistol that is doing something that Glock never intended it to do. And in addition, that person doesn't have training. In the time remaining, unless the Court has yes. Sotomayor, on the training point, is your argument that the logical inference from not having a license means that there's no training? It would be a logical inference from the lack of a license, no indication that he served in the Army, no law enforcement experience, and the fact that that was never objected to by defense counsel, no point to defense counsel objecting to the claim, yes, he actually does have some kind of training. So specifically in the PSR, the information indicates he has no weapons training? No, the PSR summarizes his statement to the police that he has no firearm license. And then in the sentencing hearing. So, once again, it's based upon no license means no training. No license plus no law enforcement experience, no Army, and no objection during the sentencing hearing when that statement is made. All of that is true. Yes. But the only way you can get to what you're arguing to the Court is saying that all of those things would lead to a reasonable inference that he has no training, not that there's something in the record saying he doesn't have training. Correct, Your Honor. Okay. And in conclusion, if I may conclude. Go ahead. I would just note that the district court correctly calculated the advisory guideline range in this case. There is no dispute about that. The court considered the 3553 factors and provided reasonable explanation for its chosen sentence. There are, as this court has recognized, a universe of reasonable sentencing outcomes. Given that framework, a six month upward variance was warranted in this case based on numerous individualized factors. Okay, thank you. Thank you. Thank you both counsel. Okay, let's call the next case. Judge, I think we- That's right, she had rebuttal. Sorry, I apologize. I need a break. And after this, we're going to take a short break. At this time, would Attorney Bird Lopez please introduce herself back on the record to begin her two minute rebuttal? Yes, may it please, I'm sorry. May it please the court, Alejandra Bird Lopez again for Mr. Jose Mendez Rodriguez. So several things. Garcia Mojica is a case that this court evaluated where extra ammunition and magazines were mentioned. But the court, the district court in that case had relied on the fact that Garcia had not learned from his lenient state court sentence for prior weapons offenses, had committed the incident offense only five years into his 20 year suspended sentence. And the problem of illegal weapons in Puerto Rico generally. So those were other justifications that were added to in combination with the rather minor consideration in that case of the additional weapons. And when this court issued its decision, I'm sorry, and when this court issued its affirmance, it stated that the sentencing court's articulation of these concerns regarding Garcia's prior lenient treatment and pattern of serious weapons offenses in his particular community can be considered as falling outside the factors explicitly considered by the guidelines. So it didn't mention as part of the affirmance the amount of ammunition. Well, there's a footnote in the opinion, though, isn't there, that says that the extra ammunition is not considered by the guidelines? That's true. There is a footnote that mentions that. But the thrust of the opinion really relies on the other factors. It should be remembered also in that case that that was a felon in possession of ammunition, and felons are not allowed to have ammunition. So that adds to the making the ammunition more aggravating in that kind of a case. But doesn't that footnote, though, means that if it's not within the heartland of the guidelines, that that would be reason to vary? Well, the problem is this. The problem is that there are cases here that consider the amount of ammunition combined with a series of other factors. And a possibly harmless or insignificant factor, maybe in combination with other factors, would make it more aggravating in a certain situation. That's not the situation here. This is a first time offender. There's two other possibilities, it seems to me. One is, the guidelines don't talk about this so a judge is free to consider it, give it whatever appropriate weight the judge decides to. Flip side of that might be, well, it's a machine gun, of course it's going to be extra ammunition, so it never will take it out of the heartland, or rarely. Do you have anything to say about either of those possibilities? Well, Rivera-Berrios clearly affirmed the second one of those options. And the first one, I don't think, can be read into the case law of the First Circuit. So if this court is going to be following anything, it should be following the Rivera-Berrios decision. And a comparable amount of ammunition magazines was considered in the Garcia Perez case. And Garcia Perez expressed doubt as to whether that was really a significant difference from the amount of ammunitions and magazines there, and remanded for consideration of that to see if the court still thought that that would make a difference in that case. We don't have a result there, so we can't say anything about that. So- Counselor, I'm sorry, could you just address your brother's other assertions, place, lack of training? Yes, so there are several things I can say about each of those. But the most important is that when the court was pressed to know what the, in this case, to know what the reasons for the variance were, he stated that in addition to the nature of the machine guns, he had considered the amount of ammunition. So those are really the two considerations that the court used to explain the sentence here. But what about counsel's argument that he started off by saying he's going to talk about 3553 factors, and then immediately went into that? Well, when the sentencing, the issuance of the sentence of this court follows more or less a little script, which is that it explains the guidelines and the three, it mentions the 3550A factors. And then it goes into a recitation of, as the court mentioned, of different, the circumstances of the arrest and a series of different information. But at no point during its recitation did it say, and I am relying on this specifically as an aggravating factor on which I am basing my variance. And I think it's important that we take the, this court should be able to rely on an explicit statement about what the court is using to rely on for the variance, because otherwise, really, the defense counsel would have to invent the court's reasoning from the rather long recitation of the circumstances of the case. And try to put together, and that's basically what the defense counsel here aptly did. At the conclusion of the hearing, he said, I understand that this court is taking into consideration factors that are already built into the guideline range or really accounted for by the guideline range. And we object to the procedural reasonableness and the substantive reasonableness of the sentence on that basis. And the court added one other reason. And it could have clarified that it was relying on a whole series of other things, but it did not. So it was not relying on all those other things that brother counsel mentioned. In addition to that, none of those things really distinguish this case from Rivera, Berrios, Garcia, Perez, or Carrasquillo-Sanchez. In the lack of control of a handgun, it was the same kind of handgun in those cases. Lack of training, that's really generally true of most illegal possession cases generally. The Rivera, Berrios, Garcia, Perez, and Carrasquillo-Sanchez all were involved defendants who were arrested in a public place. One in a restaurant, one in a car on the road, and the other near a public square. So none of those factors really, that has already been there, and it has not been a basis for a variance in those cases. Counsel, let me ask you one final question. In this particular case, had George Bezosa sentenced your client to 24 months, this was not a plea agreement case, correct? No, correct. If he had sentenced your client to 24 months, would you be making these same arguments based on these same reasons? You know, I think it's possible, but at least with a guideline sentence. At least it's a presumption. Well, I think that yes, because there is a presumption at least there. So there may be some arguments that could be raised, but it would not be in the same way. Here, it's because there is a variance. Okay, now let me ask, because under Gaul, the more, basically in cases from the circuit after Gaul, the more you vary, the more explanation. This is technically six months variance. It's maybe 15%, it's not like a two-fold, three-fold variance. But the question is, as Counsel Gottfried said, here there's a whole universe of possible sentencing solutions. So where is the line drawn? If it's within the guidelines, fine, but you could have a judge also say, in this particular case, I'm going to sentence six months below the guideline. Wouldn't that be also substantively reasonable? This same judge or another judge could have, with your arguments, understood, yeah, let's go under the guidelines. So, where do you draw the line? I think that a reasonable line to draw is whether or not there is a variance. And the extent of the variance dictates the amount of justification which is appropriate. In this case, in a sentence that's 18 to 24 months, a guideline range, a six month variance, it's not a one month variance, it's a significant variance. And six months in prison, I think that it's fair to acknowledge, is a fair amount of time in prison. Prison is uncomfortable, it's stinky, you're away from your family. I mean, six months is a significant amount of time. So, especially in the context of the guideline range in this case. So, I think that as some adequate explanations, the variance in this case is warranted. And under Rivera-Berrios, the explanation given by the court was not an adequate explanation. And this court should draw the line and should use the precedent it already has in Zapata-Garcia that says that if the court is going to use a factor that's already accounted for in the guideline, it should explain why that factor adds something particular to the case and is aggravating in some way. Thank you, counsel. Thank you. Okay, let's take a short recess. That concludes argument in this case. All rise.